IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL SCOTT, | : | CIVIL ACTION NO. **3:CV-12-2041** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| BILGAN ERDOGAN, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On October 11, 2012, *pro se* Plaintiff Jamal Scott, an inmate currently incarcerated at SCI-Huntingdon, Huntingdon, Pennsylvania, filed this instant civil rights action pursuant to 42 U.S.C. § 1983.[1]   (Doc. 1).  Plaintiff submitted a form civil rights Complaint with an attached 4-page typed Complaint.  (Doc. 1, pp. 4-7).  In his form Complaint, Plaintiff simply referred to his 4-page typed Complaint attached thereto.  On that same date, Plaintiff  also filed a Motion for Leave to Proceed *in forma pauperis*.  (Doc. 2).   Plaintiff  named the following eight (8) Defendants in his original Complaint: (1) Bilgan Erdogan, Muslim Chaplin at SCI-Huntingdon; (2) Connie Green, Grievance Coordinator at SCI-Huntingdon; (3) Dorina Varner, Head Grievance Officer at the  Pennsylvania Department of Corrections ("DOC") Central Office; (4) the Facility Chaplaincy Program Director ("FCPD")  at the DOC Central Office; (5) the FCPD employed at  SCI-Huntingdon; (6) Tabb Bickell, Facility Manager at SCI-Huntingdon; (7) John Wetzel, Secretary of the DOC  at the Central Office;  and (8) the Deputy Superintendent in

---

[1]Plaintiff Scott indicated that he filed previously two actions with this Court.  (Doc. 1, p. 1).

charge of facility programs at SCI-Huntingdon. (Doc. 1, pp. 4-5). All of the eight Defendants are employed by the DOC. As such, all Defendants are state actors.

Defendants were not served with Plaintiff's original Complaint since we were required to screen it under the Prison Litigation Reform Act of 1995.[2] *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).

On November 19, 2012, we issued a Report and Recommendation ("R&R") screening Plaintiff 's original Complaint and we recommended as follows:

1. **DISMISS WITH PREJUDICE** Plaintiff's Complaint **(Doc. 1)** as against Defendants Wetzel, Varner and Green.

2. **DISMISS WITHOUT PREJUDICE** Plaintiff's claims against Defendants the unnamed FCPD at the DOC Central Office, the unnamed FCPD employed at SCI-Huntingdon, Facility Manager at SCI-Huntingdon Tabb Bickell, and the Deputy Superintendent in charge of facility programs at SCI-Huntingdon.

3. **DISMISS WITH PREJUDICE** Plaintiff's damages claims under the RLUIPA against all Defendants in both their individual and official capacities.

4. **ALLOW TO PROCEED** Plaintiff's First Amendment free exercise of religion claim and RLIUPA claim for injunctive relief as against only Defendant Erdogan.

---

[2]The undersigned has been assigned this case for all pre-trial matters.

Further, we recommend that this case be remanded to the undersigned for further proceedings. (Doc. 6).

Plaintiff filed Objections to our R&R.

On December 18, 2012, the District Court reviewed our R&R and adopted it, in part. (Doc. 6). In particular, the District Court Ordered as follows:

1. The November 19, 2012 Report and Recommendation (*Id*.) of Magistrate Judge Thomas M. Blewitt is **ADOPTED**, in part;

2. Plaintiff's Objections (Doc. 9) are **OVERRULED**, in part;

3. The claims against Defendant Erdogan are allowed to proceed;

4. Plaintiff's RLUIPA claims are **DISMISSED WITH PREJUDICE** to the extent that they are brought against Defendants in their individual capacities and to the extent that Plaintiff seeks monetary damages against Defendants in their official capacities,

5. Plaintiff's claims against Defendants Wetzel, Varner, Green, FCPD at DOC, FCPD at SCI-Huntingdon, Bickell, and Deputy Superintendent at SCI-Huntingdon are **DISMISSED WITHOUT PREJUDICE**; however, Plaintiff is allowed (20) days from the date of this Order in which to file an amended complaint as to these Defendants;

6. Plaintiff is advised that failure to file a timely amended complaint may result in dismissal of these Defendants; and

7. The above-captioned action is REMANDED to the Magistrate Judge for further proceedings.

(Doc. 10).

On January 14, 2013, Plaintiff filed his 5-page typed Amended Complaint with two attached Exhibits, Exs. A & B. **(Doc. 12).** We now screen Plaintiff's Amended Complaint as required under the PLRA.

## II.    STANDARDS OF REVIEW.

### A.    *PLRA*

As stated, Plaintiff filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. §1915. (Doc. 2). The Prison Litigation Reform Act of 1995,[3] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C.§ 1915. Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

### B.    *SECTION 1983*

As mentioned, Plaintiff Scott filed this case as a § 1983 civil rights action. In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by

---

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[4] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well-established that personal liability under §1983 cannot be imposed upon a state official based on the doctrine of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009). As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for

---

[4]As indicated above, all eight Defendants are state actors. (Doc. 1, pp. 4-5).

a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.") *(citing Rode, supra)*. A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to §1983 liability. *See Rode,* 845 F.2d at 1208.

### C.    MOTION TO DISMISS

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss.  *See Banks v. County of Allegheny*, 568 F.Supp.2d at 588; *O'Connell v. Sobina*, 2008 WL 144199 (W.D. Pa.).

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [

> *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
>
> *Fowler,* 578 F.3d at 210-11.
>
> The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009).

## III. ALLEGATIONS OF AMENDED COMPLAINT (DOC. 12).

By way background, we first discuss the allegations Plaintiff raised in his original Complaint. Plaintiff alleged that Defendants violated his First Amendment right to free exercise of religion and his rights under the Religious Land Use and Institutionalized Persons Act of 2000cc ("RLUIPA") by preventing him from practicing his "Orthodox Sunniyy (sic)" Islamic religion. (Doc. 1, p. 4). Plaintiff claimed that the prison staff and DOC Defendants violated his First Amendment right to free exercise of religion and his rights under the RLUIPA by not allowing him to practice his religious tenets and beliefs of his "Orthodox Sunniyy (sic) Islamic religion." Plaintiff averred that Defendant Erdogan "et al" failed to follow prison protocol and "worked to funnel [Plaintiff] to the Wahabiyy (sic) sect" of the Islamic religion (*Id*., p. 5). Plaintiff claimed that Defendant Erdogan "et al" deprived him of his free exercise of religion

right in violation of the First Amendment and RLUIPA by restricting his use of his religious clothing such as his robe, head gear, and footgear, by not allowing him to use his prayer oils in accordance with his religious beliefs, by not allowing him to fast on two separate days as required by his religion, by not allowing him to have his meals in accordance with his religion, and by not providing him access to a qualified Orthodox Sunniyy Islamic teacher. (Doc. 1, pp. 5-6). Plaintiff contended that the prison limited the teaching for inmates of the Islamic religion to the "Wahabism" sect which he states "has long been ruled incorrect on fundamental principles." (*Id.*, p. 6). Plaintiff concluded his allegations by stating that "while [Defendant] Erodogan provides classes and instructors for [the Wahabism sect], he does not do the same for the Orthodox Sunniyy Muslims." (*Id.*, p. 7). In fact, Plaintiff alleged that all of the information made available by Defendant Erodogan so he can acquire knowledge about his Orthodox Sunniyy Muslim religion, such as books, audio tapes and video tapes, are based on offshoot sects of Islam. (*Id.*). As such, Plaintiff claimed that Defendants violated his free exercise of religion right and his rights under RLUIPA.

As relief, Plaintiff requested that the Court direct the Defendant prison officials to provide him with all of the religious materials he claimed in his Complaint were required to practice his Orthodox Sunniyy Muslim religion. Plaintiff also requested nominal, compensatory and punitive damages against Defendants in their individual capacities. (*Id.*).

Plaintiff indicated that he used the prison grievance procedure available at SCI-Huntingdon with respect to his claims.[5] (Doc. 1, p. 1). As discussed, the Court found that Plaintiff did not state the personal involvement of any Defendant except for Defendant Erdogan with respect to his free exercise of religion claim and his claim under RLUIPA for only injunctive relief. The Court afforded Plaintiff the opportunity to file an Amended Complaint with respect to his claims against Defendants Wetzel, Varner, Green, FCPD at DOC, FCPD at SCI-Huntingdon, Bickell, and Deputy Superintendent at SCI-Huntingdon. (Doc. 10, p. 11).

We now discuss the allegations of Plaintiff's Amended Complaint. In his Amended Complaint (Doc. 12, p. 1), Plaintiff states that on April 29, 2009, he agreed in writing to follow the suggestion of Deputy Superintendent Brian Corbin to try and work with Defendant Erdogan, the prison Muslim Chaplain, so that Erdogan could provide Plaintiff with the appropriate alterative to the "Salafiyy/Wahabiyy (sic)" teachings and services.

Plaintiff states that after numerous in person requests and interviews, on November 27, 2009, he wrote a letter to Defendant Erdogan requesting Orthodox Islam services, literature, and electronic audio/visual classes. (*Id.*, p. 2). Plaintiff avers that he sent copies of his letter to

---

[5]In his Complaint, as stated, Plaintiff indicated that he utilized the grievance procedure available at SCI-Huntingdon regarding his claims. (Doc. 1, p. 1). Plaintiff must exhaust all of his available administrative remedies prior to filing a civil rights suit. Defendant has the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Further, Plaintiff is required to exhaust all of his administrative remedies available through the SCI-Huntingdon grievance procedure with respect to each of his claim prior to filing an action in federal court. *See Spruill v. Gillis*, 372 F. 3d 218, 222 (3d Cir. 2004); *Dortch v. York County Prison*, 2009 WL 159196, *4 (M.D. Pa.). However, as noted above, exhaustion is an affirmative defense for Defendants to raise. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Dortch*, 2009 WL 159196, *4 .

Mr. Koharchik, the FCPD of Huntingdon prison, and to Deputy Superintendent Brian Corbin, and that he did not receive a response from any of these three men.

In his Amended Complaint (Doc. 12, p. 2), Plaintiff states that then he filed, on February 8, 2010, a DOC "Inmate Religious Accommodation Request Form" (DC-ADM 819) to the FCPD requesting the things listed above. Plaintiff cites to Exhibit A attached to his Amended Complaint which is a copy of §93.6 of the DOC policy regarding Religious Activities. Plaintiff avers that his "Inmate Religious Accommodation Request Form" was not answered. Plaintiff does not state with whom he filed his "Inmate Religious Accommodation Request Form."

Plaintiff states that on July 22, 2011, he wrote another letter to Mr. Bickell, the Superintendent of Huntingdon, informing him: that the North/East direction for Friday [prayer] service is incorrect; that Bilgan Erdogan and the FCPD were not responding to his request to staff forms with respect to his above stated requests; and that he requested Bickell to assist him in his "endeavor to practice [his] religion." (*Id.*, p. 2). Plaintiff states that he sent copies of his July 22, 2011 letter to Defendants DOC Secretary Wetzel, reverend Morris (former DOC FCPD) and to Assistant Superintendent Green. Plaintiff states that on September 19, 2011, Defendant Bickell did respond, in part, to his requests contained in his (Plaintiff's) July 22, 2011 letter. Plaintiff states that Defendants DOC Secretary Wetzel, reverend Morris (former DOC FCPD) and to Deputy Superintendent Green did not respond to his letter.

Finally, Plaintiff alleges that during the July 2012 fast of Ramadan, Defendant Erdogan and Heather Wiedel instituted rules for fasting which contradicted Islamic dictates, and allowed the "FCDP/Imam/Muslim Chaplain" to terminate an inmate's fast and to forfeit money that an

inmate had paid for the feast. Plaintiff also states that Defendant Erdogan and Heather Wiedel did not give inmates any option as to the menu for the feast, and charged a kitchen expense for the food that was served in the feast despite the fact that the same food was served to the inmates in the general population for free. (*Id.*, p. 3).

Plaintiff concedes that his Amended Complaint does not state the personal involvement of Defendant Varner, but he avers that it properly states the personal involvement of Defendants DOC Secretary Wetzel, Deputy Superintendent Green, the FCPD at DOC (seemingly Morris), the FCPD at SCI-Huntingdon and Superintendent Bickell. (*Id.*, p. 4).

As the only request for relief in his Amended Complaint (Doc. 12, pp. 4-5), Plaintiff requests the Court to reconsider its finding in its December 18, 2012 Memorandum (Doc. 10, p. 7) that if Plaintiff's only allegations of personal involvement in his amended pleading with respect to the dismissed Defendants concerns their responses to his grievances and appeals, these claims will fail since there is no constitutional right to a grievance procedure. As mentioned, seemingly in support of his request for relief, Plaintiff attached two Exhibits to his Amended Complaint. (Doc. 12, Exs. A & B). The first Exhibit (Doc. 12, Ex. A) consists of § 93.6 titled "Religious Activities" from section 506 of the Administrative Code of 1929 (71 P.S.§ 186). Additionally, Plaintiff attached § 93.9 from section 506 of the Administrative Code of 1929 (71 P.S.§ 186). This section is titled "Inmate Complaints" and provides that the DOC will maintain an inmate grievance system to seek review of any complaints about the conditions of an inmate's confinement in prison.

## IV. DISCUSSION.

Initially, we find that Plaintiff's sole request for relief in his amended pleading is not a proper request in a Complaint under Fed.R.Civ.P. 8(a). *Pro se* parties are accorded substantial deference and liberality in federal court. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). They are not, however, free to ignore the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short and plain statement setting forth (1) the grounds upon which the court's jurisdiction rests; (2) the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief sought by the pleader.

Further, Plaintiff was required to have filed a Motion for Reconsideration with the Court with respect to its above stated finding in its December 18, 2012 Memorandum, and he did not did so. Regardless, it is well-settled that inmates do not have a constitutionally protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *see also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure). It is further well-settled that officials handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005). *See also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010).

Thus, we will recommend that Plaintiff's sole request for relief in his Amended Complaint (Doc. 12, pp. 4-5) be dismissed with prejudice. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Based on the well-settled law, we find futility in allowing Plaintiff to amend his Amended Complaint with respect to his stated request for relief.

As stated, the Court has allowed Plaintiff's First Amendment free exercise of religion claim and RLIUPA claim for injunctive relief asserted in his original Complaint as against Defendant Erdogan to proceed. We will recommend that Plaintiff's First Amendment free exercise of religion claim and RLIUPA claim for injunctive relief asserted in his original Complaint be considered as Plaintiff's relief request for his Amended Complaint.

As discussed below, we again find that Plaintiff has sufficiently stated the personal involvement of only Defendant Erdogan in his Amended Complaint, but that he has again not properly stated the personal involvement of Defendants DOC Secretary Wetzel, Superintendent Bickell[6], Deputy Superintendent Green, the FCPD at DOC (seemingly Morris), and the unnamed FCPD at SCI-Huntingdon (seemingly Mr. Koharchik). Also, as stated, Plaintiff concedes that his Amended Complaint does not state the personal involvement of Defendant

---

[6]Plaintiff Scott indicated in his original Complaint that Defendant Tabb Bickell was Facility Manager at SCI-Huntingdon. However, in his Amended Complaint, Plaintiff indicates that Defendant Bickell is the Superintendent at SCI-Huntingdon. (Doc. 12, p. 2).

Varner.  Regardless, we find that Plaintiff's Amended Complaint does not state the personal involvement of Defendant Varner, and we will recommend that Varner be dismissed with prejudice since Plaintiff was given one opportunity already by the Court to amend his pleading as to Varner.   We now find futility and undue prejudice to Defendant Varner if the Court allowed Plaintiff to file a second Amended Complaint as to this Defendant.

We find that Plaintiff 's Amended Complaint does not comport with Fed.R.Civ.P. 8.  In order to comply with Rule 8, a Complaint  must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed the plaintiff, so that the court can determine that the complaint is not frivolous and a defendant has adequate notice to frame an answer.  *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1986).

Plaintiff has filed an improper Amended Complaint. (**Doc. 12**). A proper "amended complaint must be complete in all respects.  It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  Plaintiff's amended complaint must be "simple, concise, and direct" as required by the Rules of Civil Procedure.  *See*, Fed.R.Civ.P. 8(e)(1).

Plaintiff's Amended Complaint is not in accordance with the requirements set forth above. (*Id.*). Plaintiff's Amended Complaint is, in part, a request for reconsideration of the District Court's Order December 18, 2012 Order. (Doc. 10). In the District Court's Order, it stated the following: "Plaintiff is also reminded that, to the extent that he has named Defendants Wetzel, Varner, and Green, the Magistrate Judge is correct in stating that there is no

constitutional right to a grievance procedure. If in his amended complaint, the only allegations of personal involvement of these Defendants concern their responses to the grievance procedure and appeals, these claims will fail." (*Id.*, p. 7). Several of Plaintiff's allegations in his Amended Complaint (Doc. 12) concern the Defendants' responses to the grievance procedure and appeals. Therefore, not only is it an improper pleading because it does not meet the requirements of an amended complaint set forth above, Plaintiff's Amended Complaint (Doc. 12) is in direct contradiction of the District Court's Order. (Doc. 10, p. 7).

As such, we find that Plaintiff's claims in his Amended Complaint against Defendants Bickell, Green, Wetzel, Varner, FCPD at DOC, FCPD at SCI-Huntingdon, and Deputy Superintendent at SCI-Huntingdon should now be dismissed with prejudice.

### A.  DEFENDANTS WETZEL, VARNER AND GREEN

We will recommended that Plaintiff's claims against Defendants Wetzel, Varner and Green be dismissed with prejudice as these Defendants again are named only due to their responses to Plaintiff's grievances and appeals. As stated, Defendant Connie Green is the Grievance Coordinator at SCI-Huntingdon, Defendant Dorina Varner is the Head Grievance Officer at the DOC, and Defendant John Wetzel is the Secretary of the DOC. Plaintiff has conceded that he failed to state the personal involvement of Defendant Varner in his Amended Complaint.

As mentioned, the law is well-settled that inmates do not have a constitutional right to a grievance process, and that naming the supervisory Defendants based only on their responses to an inmate's grievance and appeals will subject these Defendants to dismissal. *Bartelli v.*

*Jones*, 231 Fed. Appx. 129, 132 (3d Cir. 2007)("a state grievance procedure does not confer any substantive constitutional right upon prison inmates.")(citation omitted); *O'Connell v. Sobina*, 2008 WL 144199, * 17 (W. D. Pa.); *Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 119, 137-138 (1977). This Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the DOC does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485 (12-16-04 Order, p. 3, J. Muir, M.D. Pa.)(Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted) affirmed 138 Fed. Appx. 414 (3d Cir. 2005); *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra*.

The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). In this case, because it is apparent that Defendants Wetzel, Varner and Green are again named

only in relation to their responses to the grievances and appeals filed by Plaintiff, we found it would be futile to allow Plaintiff to amend his Complaint as to these three Defendants since the aforementioned case law establishes that liability in a § 1983 action cannot be based on the Defendants' response to an inmate's grievance and appeals.

We find that Plaintiff's Amended Complaint is an improper pleading because it does not meet the requirements of an amended complaint set forth above. (Doc. 12). Additionally, in direct contradiction of the District Court Order (Doc. 10), Plaintiff's Amended Complaint (Doc. 12) as against Defendants Wetzel, Varner, and Green concerns allegations of the personal involvement of these three Defendants regarding their responses to his grievances and appeals.

Therefore, we recommend that Defendants Wetzel, Varner, and Green be dismissed with prejudice. We find futility in allowing Plaintiff to file a second amended Complaint as against Defendants Wetzel, Varner, and Green. *See Grayson supra*.

B.      **DEFENDANTS BICKELL, FCPD at DOC, FCPD at SCI-HUNTINGDON, and DEPUTY SUPERINTENDENT at SCI-HUNTINGDON**

Plaintiff also renamed the following five (5) Defendants in his Amended Complaint: (1) Bilgan Erdogan, Muslim Chaplin at SCI-Huntingdon; (2) the Facility Chaplaincy Program Director ("FCPD") at the DOC Central Office(Morris); (3) the FCPD employed at SCI-Huntingdon (Koharchik); (4) Tabb Bickell, Superintendent at SCI-Huntingdon; and (5) the Deputy Superintendent in charge of facility programs at SCI-Huntingdon. As mentioned, the Court previously found that Plaintiff only stated the personal involvement of Defendant Erdogan in his original Complaint regarding his First Amendment and RLUIPA claims. The Court

17

dismissed without prejudice Plaintiff's claims against Defendants FCPD at the DOC Central Office, the FCPD employed at SCI-Huntingdon, Facility Manager at SCI-Huntingdon Tabb Bickell, and the Deputy Superintendent in charge of facility programs at SCI-Huntingdon. We have now reviewed Plaintiff 's Amended Complaint and find that it again fails to state the required personal involvement with respect to Defendants FCPD at the DOC Central Office, the FCPD employed at SCI-Huntingdon, Facility Manager Tabb Bickell, and the Deputy Superintendent in charge of facility programs at SCI-Huntingdon. We find that Plaintiff's Amended Complaint is not in conformity with the §1983 personal involvement requirement regarding the stated four (4) Defendants. As stated, it is well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Additionally, it is well-established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*. *See Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), repeated the personal involvement necessary in a § 1983 action. In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court stated:

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S.Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

"Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of *respondeat superior*, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

In *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D.Pa.), the Court stated:

The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

*See Sims v. Piazza*, 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the assumption of truth.")(citation omitted).

In light of the aforementioned personal involvement standards of a 42 U.S.C. § 1983 action, it is evident that Plaintiff's Amended Complaint again fails to allege the required personal involvement with respect to Defendants FCPD at the DOC Central Office, the FCPD employed at SCI-Huntingdon, Facility Manager at SCI-Huntingdon Tabb Bickell, and the Deputy Superintendent in charge of facility programs at SCI-Huntingdon. Additionally, in direct contradiction of the District Court Order, (Doc. 10) Plaintiff's Amended Complaint only raises allegations of the personal involvement of the above four Defendants regarding their responses to grievance procedure and appeals. Plaintiff also fails to sufficiently state how any of these four (4) Defendants prevented him from engaging in any conduct mandated by his faith. Further, Plaintiff fails to state that his ability to practice his religion was substantially impaired by the personal conduct of any of these four (4) Defendants. Further, since Plaintiff has completely failed to state that his religious exercise has been burdened by conduct attributable to the stated four (4) Defendants and that the burden was substantial, he has failed to state a *prima facie* case under RLUIPA, and he fails to state any claim under the First Amendment as against these four Defendants.

Therefore, we will now recommend that Defendants FCPD at the DOC Central Office, the FCPD employed at SCI-Huntingdon, Tabb Bickell, and the Deputy Superintendent in charge of facility programs at SCI-Huntingdon be dismissed with prejudice. We find that it is now clear that it would be futile for the Court to allow Plaintiff to amend his claims for a second time as against Defendants FCPD at the DOC Central Office, the FCPD employed at SCI-Huntingdon, Tabb Bickell, and the Deputy Superintendent in charge of facility programs at SCI-

Huntingdon.  *See Grayson, supra*.

**C.   DEFENDANT ERDOGAN**

We again find, for present screening purposes,  that Plaintiff has sufficiently stated First

Amendment free exercise of religion and RLIUPA claims as against only Defendant Erdogan in

his Amended Complaint.

In *Thompson v. PA DOC*, 2007 WL 404056, *2-*3 (M.D. Pa. 2-1-07), the Court stated:

> The First Amendment provides that "Congress shall make no law
> respecting an establishment of religion, or prohibiting the free exercise
> thereof...." U.S. Const. Amend. I. In *Cantwell v. Connecticut,* 310 U.S. 296,
> 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that
> the First Amendment was incorporated by the Fourteenth Amendment and,
> thus, was applicable to the states.
> It is well established that "convicted prisoners do not forfeit all
> constitutional protections by reason of their conviction and confinement in
> prison." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447
> (1979). "Inmates clearly retain protections afforded by the First
> Amendment, ... including its directive that no law shall prohibit the free
> exercise of religion." *O'Lone v. Shabazz,* 482 U.S. 342, 348, 107 S.Ct.
> 2400, 96 L.Ed.2d 282 (1987) (citations omitted). Constitutional rights,
> however, including the right to practice religion, may be reasonably
> restricted in order to facilitate valid penological objectives, such as
> deterrence of crime, rehabilitation of prisoners, and institutional security.
> *See Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132,
> 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Pell v. Procunier,* 417 U.S. 817,
> 822-23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Accordingly, a prison
> inmate "retains [only] those rights that are not inconsistent with his
> status as a prisoner or with the legitimate penological objectives of the
> corrections system." *Pell,* 417 U.S. at 822.

*See also Garraway v. Lappin*, 2012 WL 959422, *12 (M.D. Pa. March 21, 2012).

In *Garraway v. Lappin*, 2012 WL 959422, *12, the Court  stated:

> The Free Exercise Clause guarantees substantive right but does not guarantee
> that all religious sects will be treated alike in all respects. See *Cruz v. Beto,*
> 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). While prisoners must

be given reasonable opportunity to exercise their faith, the Constitution does not require that a religious adviser be provided to cater to every sect/sub-sect in the penitentiary, nor does the Constitution require that prisoners be provided with a religious adviser of their choice or with the one belonging to their unique religious sect/sub-sect (or sharing their unique religious views). *See Blair–Bey v. Nix,* 963 F.2d 162 (8th Cir.1992), *cert. denied,* 506 U.S. 1007, 113 S.Ct. 620, 121 L.Ed.2d 553(1992); *see also Allen v. Toombs,* 827 F.2d 563, 569 (9th Cir.1987) (a prisoner is not entitled to have the clergyman of his choice provided for him in the prison); *Gittlemacker v. Prasse,* 428 F.2d 1, 4 (3d Cir.1970) (same); *see also Pogue v. Woodford,* 2009 U.S. Dist. LEXIS 75943 at *8 (E.D. Cal.2009) (only when a prisoner's sole opportunity for group worship arises under the guidance of someone whose beliefs are significantly different from his own is there a possibility that the prisoner's free exercise rights are violated) (citing *SapaNajin v. Gunter,* 857 F.2d 463, 464 (8th Cir.1988)

Further, we find that Plaintiff has stated a claim under RLUIPA as against only Defendant Erdogan insofar as he seeks injunctive relief.

In *Logan v. Lockett*, 2009 WL 799749, *3 (W.D. Pa.), the Court stated:

> To prevail on a claim under RLUIPA, an inmate must demonstrate that the State has imposed a "substantial burden" on the inmate's "religious exercise." RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5. As explained by one court, a claim under RLUIPA includes four elements, with a shifting burden of proof. Plaintiff has the burden of proving both that his religious exercise has been burdened, and that the burden is substantial. *Spratt v. Rhode Island Dept. Of Corrections,* 482 F.3d 33 (1st Cir.2007). The burden then shifts to the government to show both that the burden furthers a compelling governmental interest, and that the burden is the least restrictive means of achieving that compelling interest. *Id.*

Thus, we again find that Plaintiff Scott can only proceed on his request for injunctive relief as against Defendant Erdogan regarding his RLUIPA claim, *i.e.,* for the Court to order this Defendant to provide him with all of the above stated items he alleges in his Amended

Complaint are necessary to practice his religion. (Doc. 12, pp. 2-3). *See Sharp v. Johnson*, 2008 WL 941686, *19.

Therefore, we will recommend that Plaintiff's First Amendment free exercise of religion claim and RLIUPA claim for injunctive relief in his Amended Complaint (Doc.12) be allowed to proceed as against only Defendant Erdogan.

## V. RECOMMENDATION.

Based on the foregoing discussion, we respectfully recommend that the Court:

1. **DISMISS WITH PREJUDICE** Plaintiff's Amended Complaint **(Doc. 12)** as against Defendants Wetzel, Varner, Green, FCPD at the DOC Central Office (Morris), the FCPD employed at SCI-Huntingdon (Koharchik), Superintendent at SCI-Huntingdon Tabb Bickell, and the Deputy Superintendent in charge of facility programs at SCI-Huntingdon.

2. **ALLOW TO PROCEED** Plaintiff's Amended Complaint **(Doc.12)** and his First Amendment free exercise of religion claim and RLIUPA claim for injunctive relief as against only Defendant Erdogan.

3. **DISMISS WITH PREJUDICE** Plaintiff's sole request for relief in his Amended Complaint (Doc. 12, pp. 4-5).

4. **ALLOW TO PROCEED** Plaintiff's Request for Relief with respect to his First Amendment free exercise of religion claim and RLIUPA claim for injunctive relief asserted in his original Complaint **(Doc. 1)** as against only Defendant Erdogan.

Further, we recommend that this case be remanded to the undersigned for further proceedings.



 s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: January 30, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL SCOTT, | : | CIVIL ACTION NO. **3:CV-12-2041** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| BILGAN ERDOGAN, *et al.*, | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January 30, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the magistrate judge,
> making his or her own determination on the basis of that record.  The judge may also
> receive further evidence, recall witnesses or recommit the matter to the magistrate judge
> with instructions.

Failure to file timely objections to our foregoing Report and Recommendation may constitute a waiver of any appellate rights.

s/ Thomas M. Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge

Dated: January 30, 2013